<pre>
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
 2                       HAMMOND DIVISION

 3    UNITED STATES OF AMERICA        ) Cause No.:
                                      ) 2:17-cr-169
 4         vs.                        )
                                      )
 5    SHEILA GEARY,                   ) Hammond, Indiana
                                      ) June 27, 2019
 6              Defendant.            )
                                      )
 7    _____ )

 8
                            VOLUME II
 9           TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE JOSEPH S. VAN BOKKELEN
10

11    APPEARANCES:

12    For the Government:    GARY T. BELL
                            ASSISTANT UNITED STATES ATTORNEY
13                          UNITED STATES ATTORNEY'S OFFICE
                            5400 Federal Plaza, Suite 1500
14                          Hammond, IN  46320
                            (219) 937-5500
15                          Gary.Bell@usdoj.gov

16    For the Defendant:     KERRY C. CONNOR
                            LAW OFFICE OF KERRY C. CONNOR
17                          9013 Indianapolis Boulevard, Suite C
                            Hammond, Indiana  46322
18                          (219) 972-7111
                            Kcconnor@sbcglobal.net
19


20
      Also Present:         Austin Berry, via teleconference
21                          David Beier, U.S. Probation

22


23    Proceedings reported by stenotype.  Transcript produced by
      computer-aided transcription.
24

25
</pre>

```
 1          (The following proceedings were held in open court

 2           commencing at 11:00 a.m., reported as follows:)

 3          (Call to Order of the Court.)

 4              THE COURT:  You can all be seated.

 5              We are here for the continuation of the sentencing

 6    of defendant, Sheila Geary, in Case No. 2:17-CR-169.  Ms. Geary

 7    is present with her attorney, Kerry Connor.  And the government

 8    is represented by Assistant United States Attorney Gary Bell,

 9    who is here, and also telephonically

10    Assistant United States Attorney Austin Berry.

11              Ms. Geary, how are you feeling?

12              THE DEFENDANT:  Feeling well.  Thank you, sir.

13              THE COURT:  Okay.  Are you ready to go forward?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Ms. Geary has pled guilty to Count 3 of

16    the Indictment charging her with possession of child

17    pornography in violation of 18 U.S.C. § 2252(a)(4) and the

18    Court has adjudged her guilty of that offense.

19              At the last hearing, the Court received evidence and

20    argument as to how the sentencing guidelines apply to

21    Ms. Geary's case and what sentence is warranted under

22    Section 3553(a) sentencing factors.

23              Since the last hearing, the Court has received from

24    Ms. Geary a supplemental sentencing memorandum as well as

25    letters from her son MM-3 and daughter MF-1.  The Court also
```

1  received a complete recording of the police interviews with

2  Ms. Geary.  Having considered all the evidence or arguments as

3  well as materials filed after the last hearing, the Court will

4  first announce its rulings regarding the sentencing guidelines

5  objections.

6          The Court finds that Section 2G2.2(c)(1) of the

7  sentencing guidelines applies to Ms. Geary as she permitted

8  MF-2 to be used in sexually explicit conduct for the purpose of

9  producing a visual depiction of such conduct.  As the

10 application note seven states, the cross-reference to

11 subsection (c)(1) is to be construed broadly.

12         The government has established that Ms. Geary knew

13 of her husband's interest in child pornography before pictures

14 of MF-2 were taken.  The Court believes that Ms. Geary did not

15 assist or participate in David Geary's taking of the

16 pornographic pictures of MF-2, but she knew that he would be

17 taking such pictures, and she did nothing to prevent that.

18         She knew that he would be taking such pictures

19 because he asked in the context of them viewing child

20 pornography together if he would like similar pictures of

21 MF-2 -- or she would like similar pictures of MF-2.  After she

22 responded affirmatively, he took such pictures and showed them

23 to her within 24 hours.

24         She again responded positively, which encouraged him

25 to keep photographing her.  This account is confirmed by

1   David Geary's passing the polygraph exam on the issue.  And

2   while Ms. Geary also passed the polygraph exam, she was not

3   asked the questions on whether she knew that David Geary would

4   be taking pornographic pictures of MF-2 but whether she

5   participated or assisted in any way in taking those pictures.

6            Ms. Geary claims that David Geary should not be

7   believed when he stated that she knew about him intending to

8   take pictures of MF-2.  She points out, and this is

9   corroborated by her grown-up children, that David Geary was

10  abusive toward her, manipulative, and violent and suggests that

11  negative testimony against her is meant to only further punish

12  her.

13           The Court is well aware that David Geary is all

14  those things.  But the Court is also aware that Ms. Geary

15  confessed that she would find pornographic picture of

16  prepubescent girls to share them with David Geary.  There is no

17  suggestion that she did this out of fear of him.

18           Also, while she never called police on behalf of her

19  children being abused by David Geary, she did call police when

20  she herself suffered at his hands.  Also, she claims that when

21  she confronted David Geary about molesting MF-2, there are some

22  reasons to believe that she didn't -- there are some reasons to

23  believe that she didn't, in fact, do that.

24           She claims that he was on his knees before her

25  begging for mercy.  When she kicked him out of the house, she

1    was not particularly afraid of him at that point.   To

2    summarize, the Court credits the government for establishing by

3    the preponderance of the evidence through its in-court

4    presentation that Ms. Geary permitted David Geary to use MF-2

5    in producing pornographic pictures.

6           The Court is mindful that one wants to believe that

7    a mother would not allow this, but the culmination of this case

8    when Ms. Geary kicked David Geary out of the house, called the

9    police, and turned over the flash drive with the pornographic

10   pictures further confirms that Ms. Geary wasn't just a

11   bystander in this case.

12          The timeline of events showed that she turned

13   against David Geary not because of a culmination of outrage

14   against him but because she realized that her older daughter

15   knew of MF1's sexual abuse.   She realized she was no longer the

16   proprietor of the dirty secret in her house and was worried

17   that the children were talking amongst each other and that her

18   own involvement would be revealed unless she acted first.

19          Thus, this is not a case of punishing a victim

20   alongside the perpetrator.   While Ms. Geary is not as culpable

21   in any means of the word as David Geary, she has failed to

22   protect MF-2 from David Geary.   Worse yet, she permitted the

23   abuse to happen.

24          In turn, for her own objections to the PSR, the

25   defendant argues that David Geary's use of child pornography

1   would have not come to light but for the fact that Ms. Geary

2   turned over the flash drive to the police, which they did not

3   know.   In addition, Ms. Geary points out that David Geary is

4   solely responsible for creating the thumb drive containing

5   child pornography.

6          Ms. Geary asks that she be accorded a four-level

7   reduction in her offense level for her minimal role in the

8   offense.   The Court does not believe that Ms. Geary should get

9   a four-level reduction in her offense level.   She was charged

10  with possession of child pornography, and she is being

11  sentenced for that.

12         She is not being sentenced for production of child

13  pornography; and while she was not involved in the technical

14  aspects of keeping such images, she viewed child pornography

15  alongside with David Geary and eventually kept some of the

16  images in a digital form on a thumb drive behind the mirror.

17  Furthermore, insofar as her guideline sentence is driven by her

18  permitting MF-2 to be abused, her role is not insignificant.

19         Without her consent, MF-2 may have been spared.

20  However, the Court believes that she may be accorded a minor

21  participant reduction; this is, to some extent, her conduct may

22  have been caused by her desire to accommodate David Geary for

23  her own welfare, but even this is borderline as her eventual

24  action of kicking David Geary out of the house shows that she

25  was not as afraid of him as she would like the Court to

1    believe.

2         She did not first call the police or went to the

3    police station so as to seek his arrest first.  Rather, she

4    confronted him first, telling him that she would be calling the

5    police.  And only a week later, after David Geary had left the

6    house, did she actually call the police.

7         Finally, the Court finds that Ms. Geary is liable

8    jointly and severally with David Geary for restitution to MF-2

9    in the amount of $55,600.  As for the probation officer's

10   suggestion that Sections 5K2.12, the coercion and duress

11   section, and 5K2.16, the voluntary disclosure of offense

12   section apply, the Court disagrees for the reasons stated in

13   the government's sentencing memorandum.

14        All the evidence in this case suggests that even

15   though Ms. Geary may have been influenced by David Geary in

16   viewing and possessing child pornography, she was not coerced

17   in the sense contemplated by Section 5K2.12.  Likewise, turning

18   over the thumb drive was in reaction to Ms. Geary's fear that

19   the evidence about her wrongdoings would be coming out as

20   opposed to voluntarily 'fessing up.

21        She kept the thumb drive for four years as an

22   insurance for herself; and as she saw it, now was the time to

23   shift the blame from herself and solely to David Geary.

24        I will now state how the sentencing guidelines apply

25   in this case.  The Court has determined that Ms. Geary's total

1   offense level is 34.  This calculation is derived as follows:

2              Ms. Geary's base offense level is 32.  This base

3   offense level is increased by four levels pursuant to

4   Section 2G2.1(b)(1)(A) of the sentencing guidelines because the

5   victim was under 12 years old.

6              The base offense level is further increased by two

7   levels pursuant to Section 2G2.1(b)(5) of the sentencing

8   guidelines because Ms. Geary was the parent of the victim.

9              The base offense level then is decreased by two

10  levels pursuant to Section 3B1.2(b) of the sentencing

11  guidelines because Ms. Geary was a minor participant.  The

12  resulting level is 36, from which two points are subtracted for

13  Ms. Geary's acceptance of responsibility.

14             Ms. Geary's criminal history category is one, which

15  combined with Ms. Geary's total offense level results in a

16  sentencing range of 151 to 188 months of imprisonment.

17             Furthermore, according to the sentencing guidelines,

18  the term of supervised release is five years to life.

19  Ms. Geary is not eligible for probation.  The fine range is

20  $20,000 and $200,000.  Restitution is in the amount of $55,600.

21  And there is a special assessment of $100.

22             These sentencing guideline calculations do not

23  consider the factors or arguments for a variance from the

24  advisory sentencing guidelines under 18 U. S. C. § 3553(a).

25             And to both counsel, on the basis of my findings --

1    not that you agree with them, but am I correct based on my

2    findings?  Am I accurate, Mr. Bell?

3              **MR. BELL:**  I will refer to Mr. Berry.

4              **THE COURT:**  Mr. Berry?

5              **MR. BERRY:**  Yes, Your Honor, I believe that's

6    correct.

7              **THE COURT:**  Okay.

8              **MS. CONNOR:**  Based on your conclusions, yes.

9              **THE COURT:**  Okay.  I'm not asking you to agree with

10   them, just based on my conclusions.

11             And, Ms. Geary, do you agree with Ms. Connor?

12             **THE DEFENDANT:**  Yes, sir.

13             **THE COURT:**  Okay.  Thank you.

14             The sentencing guidelines are just one of the

15   factors that influenced this Court in sentencing.  The Court

16   must also consider the statutory factors under

17   18 U.S.C. § 3553(a).  Only Section 3553(a) controls, not the

18   guidelines.

19             At the last hearing, Ms. Geary made a statement on

20   her or behalf.  Before I announce the punishment for

21   Ms. Geary's crime, is there anything else that Ms. Geary would

22   like to say or add to her statement?

23             **THE DEFENDANT:**  Yes, sir.

24             **THE COURT:**  Okay.  Would you do that right now?  You

25   can sit there and do it.

1          **THE DEFENDANT:**  I understand now what I did was

2    wrong by holding on to information.  I feared for my life.  I

3    feared for the life of my children.  I would give my life for

4    all my kids.  I didn't know at the time the way that my mind

5    was messed up from David's influence, honestly, at that time

6    that it was wrong for me to hold on to that information.

7          Had I known and my mind had been in the right place,

8    I would have turned in the information a lot sooner.  And I

9    would have sought help sooner.  I feared him.  And, like I

10   said, I -- at that time I did not -- I couldn't connect that it

11   was wrong, and I'm sorry for what I did.  I would never in a

12   million years do anything to cause harm to any of my children.

13         **THE COURT:**  Thank you very much for the comments.  I

14   appreciate them.

15         **THE DEFENDANT:**  Thank you, sir.

16         **THE COURT:**  In accordance with 18 U.S.C. § 3553(a),

17   in determining a particular sentence to be imposed, the Court

18   must consider the nature and circumstances of the offense and

19   the history and characteristics of the defendant, and the Court

20   must impose a sentence that is sufficient but not greater than

21   necessary to comply with the following purposes:

22         First, to reflect the seriousness of the offense, to

23   promote respect for the law, and to provide just punishment for

24   the offense; secondly, to afford adequate deterrence to

25   criminal conduct; third, to protect the public from further

1     crimes of the defendant; and, finally, to provide the defendant

2     with needed correctional treatment in the most effective

3     manner.  In addition, the Court must consider the kinds the

4     sentences available, the advisory range, any pertinent policy

5     statements issued by a Sentencing Commission, the need to avoid

6     sentencing disparities, and the need to provide restitution.

7            The Court must consider each of these factors and

8     apply them without any thumb on the scale favoring a guideline

9     sentence.  In considering the factors under Section 3553(a),

10    the Court also notes that Ms. Geary's family have sent me

11    letters.  I have read all the letters and will take them into

12    account in reaching Ms. Geary's sentence.  The letters were

13    filed of record, although that record is going to be sealed.

14            A sentence of 57 months of imprisonment is

15    sufficient but not greater than necessary to comply with the

16    purposes of sentencing.  Because Ms. Geary does not have

17    financial resources to pay a fine without impairing her ability

18    to support herself and her dependents, I will not impose a

19    fine.

20            Ms. Geary will be ordered to pay restitution in the

21    amount of $55,600 to MF-2, and her liability will be joint and

22    several with her codefendant, David Geary.  Finally, Ms. Geary

23    will be ordered to pay the United States a special assessment

24    of $100 within 14 days of entry of judgment.

25            Because Ms. Geary will need monitoring and oversight

```
 1  to prevent her from re-offending as well as assistance to
 2  transition from life in prison to life in larger society, after
 3  Ms. Geary's incarceration is over, Ms. Geary will be placed on
 4  supervised release for a period of five years.
 5          Did both counsel receive and review the Court's
 6  contemplated conditions of supervision filed at Docket
 7  Entry 84?
 8          MS. CONNOR:  Yes, Your Honor.
 9          THE COURT:  Okay.  Mr. Berry, did you receive that?
10          MR. BERRY:  Yes, Your Honor.
11          THE COURT:  And did you review that?
12          MR. BERRY:  Yes, Your Honor.
13          THE COURT:  Okay.  And, Ms. Geary, have you reviewed
14  the Court's contemplated conditions of supervised release with
15  Ms. Connor?
16          THE DEFENDANT:  Yes, sir, I did.
17          THE COURT:  And, Ms. Geary, you said you read the
18  conditions.  Do you want them reread here in Court for you or
19  do you waive that reading?
20          THE DEFENDANT:  I waive it, sir.
21          THE COURT:  Thank you very much.
22          Ms. Connor, does the defendant have any objections
23  or comments as to the conditions of supervised release?
24          MS. CONNOR:  I do have a couple of questions, if I
25  might.
```

 1           **THE COURT:**  Okay.

 2           **MS. CONNOR:**  Calling the Court's attention to

 3    No. 17.

 4           **THE COURT:**  Just a minute.  Let me find them.  I

 5    apologize, I need to get the copy.  The form I had was not the

 6    right one.

 7           Okay.  Ms. Connor.

 8           **MS. CONNOR:**  Yes, Your Honor.

 9           I am -- honestly, based on the Court's sentence,

10    it's very likely that MF-2 will be 18 at the time this even

11    becomes an issue.  But it's asking for Court approval.  Is that

12    this Court's approval for meetings, communications, activities,

13    and visits?  Is that the juvenile court's approval?

14           **THE COURT:**  It's this Court's approval.

15           **MS. CONNOR:**  So not the probation officer but this

16    Court?

17           **THE COURT:**  This Court.  The probation office would

18    be one place you would go, but this Court has the final say as

19    to what she would be requesting.

20           **MS. CONNOR:**  I am concerned, is it the probation

21    officer making the decision or is it the Court making the

22    decision about meetings, communications, activities, and visits

23    with MF-2, and how does the juvenile court's decision in that

24    play in?

25           **THE COURT:**  This Court is the final arbiter of that.

 1    There is some steps that you go through to get up to here, less

 2    imposing places; but, first, I would go to the suggestion of

 3    the probation officer.  Where the state juvenile court comes

 4    into play on this thing, I don't know quite how it comes into

 5    play.  I am the one that's announcing the sentence, and these

 6    are the supervised release conditions that I'm imposing.

 7            **MS. CONNOR:**  Okay.  Well, Your Honor, I'm going to

 8    object to 17.  Because the juvenile court is involved in these

 9    circumstances, it seems to me that the juvenile court is the

10    appropriate place to determine what is the best in terms of

11    meetings, communications, activities, and visits with MF-2.

12            I can see where if the Court potentially were to

13    impose some kind of a violation if, for some reason, the Court

14    order by the juvenile court was violated.  I have also some

15    additional concerns that, in essence, the probation officer who

16    is really not in a position to make that determination after

17    the juvenile court does, would be somehow assessing.

18            So I'm going to object to No. 17, Your Honor.

19            **THE COURT:**  Okay.  Mr. Berry.

20            **MR. BERRY:**  I am happy to respond.  I think your

21    condition is well crafted in the sense that it makes it clear

22    that you're not forbidding any communication.  You are asking

23    for some standard by which you can ensure that the victim is

24    not going to be further harmed by the perpetrator of this crime

25    against her.

 1          And to the extent that Ms. Connor says that there is

 2    a problem in terms of some conflict between the federal court

 3    and the juvenile court, the supremacy clause obviously fixes

 4    that.  You have paramount authority to make this decision

 5    during the time period of her supervised release; and

 6    notwithstanding anything the juvenile court might hold or say

 7    about what they can do, this condition controls.  And, again, I

 8    think -- as I said, I think it is crafted in a form that gives

 9    you the flexibility to permit that if it turns out to be a

10    healthy and a good thing to do.

11          But at this point, I think it's a perfectly

12    reasonable condition.  And in 57 months from now, she will not

13    be 18 years old.  MF-2 will not be 18 by that time.  And so we

14    do need to keep that in mind, and I think that this condition

15    is perfectly fine.

16          **THE COURT:**  The alternative proffered to me, which I

17    didn't find to be very acceptable, was to set the sentence at a

18    level that she would -- MF-2 would be an adult by that time.

19    That's not an appropriate way to sentence people, so I did not

20    do that.  I'm going to let it stand like it is.  There is some

21    stopgaps in the conditions themselves.

22          First, they're reviewed upon the time Ms. Geary is

23    released from prison to go over.  Some things are going to

24    change by the simple fact she has been in prison and so forth.

25    These are kind of prospective looking forward.  I'm not telling

 1    you something you don't already know.  They are prospective

 2    looking forward trying to check boxes, dot i's and so forth,

 3    and I think at some point, they will not apply.  But right now,

 4    I think I'm going to overrule the objection and leave 17 as is.

 5            **MS. CONNOR:**  Also, I'm going to object to No. 21,

 6    Your Honor, which is similar in nature.  And, again, among

 7    other things -- first of all, you refer to her own children.

 8    The only child that would be implicated by any of these

 9    provisions would be MF-2.

10            **THE COURT:**  Correct.

11            **MS. CONNOR:**  But, again, I'm going to object.  I

12    think that in both 17 and 21, the Court is attempting to put

13    itself in a position of assessing what is right for MF-2, when

14    really the appropriate court for that is the juvenile court.

15    Now, does that mean that this Court might find some type of

16    violation of supervision, that is, Ms. Geary violated the

17    conditions as set by the juvenile court?  Possibly.  But,

18    again, to require that the adult be approved by probation that

19    supervises interaction between MF-2 and her mother I think is

20    not appropriate.  That is something that should be determined

21    by the juvenile court, who is fully aware all of the

22    circumstances and is able to assess what is best and healthy

23    for MF-2, not this Court.

24            I perceive that we could actually be having a

25    juvenile hearing in this courtroom in 57 months for this Court

 1    to decide what is best for MF-2 when there is already a court

 2    in place to do that, Your Honor.  Especially there's concerns

 3    about it being that probation would have any kind of discretion

 4    in those assessments.

 5            **THE COURT:**  I appreciate -- Mr. Berry.

 6            **MR. BERRY:**  Sure.  I think I know where you are

 7    going to go.  What I would point out is No. 21, Your Honor,

 8    deals predominantly with forbidding Ms. Geary from engaging in

 9    contact with children under the age of 18, not just MF-2, who

10    will be the only one under the age of 18 that's her own child.

11            This is an important condition to the extent it

12    prevents her from, for example, working at a daycare or going

13    to any kind of place where there might be young children that

14    could be in her charge.  Similarly, she shouldn't be allowed to

15    go up to an elementary school where her grandchildren are

16    attending or anything like that without those parents knowing

17    that she is a registered sex offender walking down the halls of

18    the school with the children of that age group.  This condition

19    is predominantly geared toward that.  To the extent that

20    Ms. Connor's objection relates to any of that, I think it is

21    easily overruled about that aspect.

22            To the extent she exclusively focused her objection

23    on the aspect of it relating to MF-2, I think that's well

24    addressed in your previous comments about condition No. 17, and

25    this Court has the flexibility to amend this at the time as to

 1    MF-2 herself.

 2              **THE COURT:**  Okay.  It does have a strong scienter

 3    element to it, knowingly and intentionally.  It can't be

 4    accidental.  It has to be a deliberate type thing.  I tend to

 5    agree with the government on it.  I think that we're looking

 6    down the line.  It won't go into effect until she is released.

 7    There is a couple places, at least one place in here, that

 8    strongly suggestions to meet with probation about modifying.

 9              If she wants to modify some conditions at that point

10    in time, the Court clearly -- that clearly can be brought back

11    to the Court.  It's going to be a different day and a different

12    age at that point.  A lot of things will have happened.  She'll

13    have been in jail for some significant period of time.

14              And, you know, the question is going to be based on

15    where she is at that point, is that an appropriate restriction?

16    So at this point, I'm going to overrule your objection, but it

17    is sort of with the caveat that I'm saying there is going to be

18    some other time to bring that back up, which may be a better

19    setting for it.

20              **MS. CONNOR:**  Okay.  I just note my objection.

21              **THE COURT:**  I'm not being critical of that at all.

22              **MS. CONNOR:**  And one other point -- I don't know if

23    the Court is aware of it.  Just this week there was an opinion

24    issued in the Supreme Court in which four judges discussed --

25    specifically, I believe it was Justice Gorsuch -- the

1  constitutionality of the mandatory minimum five years for

2  supervised release and the question of whether or not a

3  mandatory minimum on supervised release is something that the

4  jury would have to find, Your Honor.

5          **THE COURT:**  Okay.

6          **MS. CONNOR:**  Just because I'm aware of that case, I

7  am lodging an objection to the five years of supervised

8  release, simply if the Court could note my objection, if down

9  the road that issue becomes more prominent.

10         **THE COURT:**  Okay.  Mr. Berry.

11         **MR. BERRY:**  I don't have any comment on that right

12 now, Your Honor.  I think it is perfectly permissible at this

13 point unless and until the Supreme Court says otherwise.

14         **MS. CONNOR:**  Your Honor, may I state one more thing

15 for the record?

16         **THE COURT:**  Yes, you may.

17         **MS. CONNOR:**  Thank you.  I believe that there is a

18 case pending before this Supreme Court right now, and one of

19 the issues is whether or not in order to move forward -- and I

20 apologize if it's decided because there has been a plethora of

21 cases decided in the last week.

22         There is a case pending in which there was an issue

23 as to whether or not there was a waiver at sentencing because

24 the objections were not raised once again, so in terms of the

25 Court's assessment of the guidelines and factual conclusions

 1    that got the Court to that point, I want to make clear that we

 2    do maintain our objections to that.  And, again, it's just an

 3    attempt to maintain the record based on what appears to be an

 4    upcoming Supreme Court ruling.

 5            **THE COURT:**  I have no problem with that, and you

 6    need to do that.  My comment would be as to the five-year limit

 7    that I placed on it, I would have done that regardless, whether

 8    there was a mandatory minimum or not.  So I think that's

 9    reasonable.  The five years I think is reasonable.  And as to

10    the other issues, I know you want to protect your record, and

11    do whatever you need to do to protect the record.

12            **MS. CONNOR:**  Thank you.

13            **THE COURT:**  Do you think your record is adequately

14    protected?

15            **MS. CONNOR:**  I do.  I just wanted to make sure that

16    we had re-raised our objections to the guideline

17    calculations --

18            **THE COURT:**  I understand.

19            **MS. CONNOR:**  -- based on all previously made

20    objections.

21            **THE COURT:**  I understand.  Mr. Berry, do you have

22    any comment on that?

23            **MR. BERRY:**  No, Your Honor.

24            **THE COURT:**  Okay.  Ms. Geary, do you agree with

25    Ms. Connor?

 1          THE DEFENDANT:  Yes.

 2          THE COURT:  Does the government have any objections

 3    or comments to the Court's contemplated conditions of

 4    supervision?

 5          MR. BERRY:  No, Your Honor.

 6          THE COURT:  That was a no?

 7          MR. BERRY:  No, Your Honor, I do not have any

 8    objections.

 9          THE COURT:  Thank you.

10          The term of supervision will include all the

11    conditions list in the order at Docket Entry No. 84, which are

12    subject to objection.

13          The sentence I stated along with these conditions of

14    supervision are necessary to achieve the statutory sentencing

15    goals and is reasonably related to the nature and circumstances

16    of the offense of conviction as well as the history and

17    characteristics of Ms. Geary.  The length and conditions of

18    supervision do not involve a greater deprivation of liberty

19    than is reasonably necessary.  The sentence is warranted by the

20    totality of all the Section 3553(a) factors.

21          In particular, the Court has considered the nature

22    and circumstances of the offense.  At that outset, let me be

23    completely clear.  David Geary is the primary villain in this

24    case, and for that he is serving almost 300 months of

25    imprisonment.  But Ms. Geary is not a mere victim of

1    David Geary or an accidental accomplice.  She pleaded guilty to

2    possession of child pornography, and the Court found her guilty

3    of that offense.  Worse yet, one of the victims is her own

4    daughter, who was just seven years of age at the time

5    David Geary took pornographic images of her.  Ms. Geary knew

6    about the images and knew that more of them would be taken, yet

7    she stood by and did not report the conduct to the police until

8    four years later.

9          It's likely that she delayed such reporting because

10   she, herself, was involved.  In addition to the images of MF-2,

11   Ms. Geary possessed more than 600 other images of child

12   pornography.  At some point she hid the thumb drive with the

13   images behind a mirror in her house, and the thumb drive stayed

14   there for four years.

15         Also in 2013, Ms. Geary asked MF-2 if David Geary

16   had ever touched her inappropriately.  MF-2 told her he had

17   done so, but Ms. Geary did nothing about that.  She claimed she

18   confronted David Geary who begged for forgiveness.  For the

19   next four years, life went on as usual, all the while,

20   David Geary continued molesting MF-2; and there is no evidence

21   that Ms. Geary ever asked MF-2 again if she was still being

22   molested by David Geary and has never asked MF-1 whether she

23   had been molested.  Ms. Geary chose to look the other way at

24   the expense of her daughters.

25         Her children defended her actions, and this can be

1    reasonably expect of children, suggesting that she was an

2    abused wife in fear of her life.  Yet, the records suggest that

3    she was not as vulnerable as she has portrayed herself to be.

4    Yes, this was a dysfunctional household where the father raged

5    against the children; but it was always dysfunctional because

6    the mother, for reasons known only to her, abandoned her duties

7    to her children.

8         The crimes came to an end not because Ms. Geary

9    said, "enough is enough," but thankfully because her oldest

10   daughter spoke up and revealed her knowledge about David Geary

11   molesting MF-1.  What followed was not so much 'fessing up to

12   what Ms. Geary's own responsibility was but self-preservation.

13   That is, the cat was out of the bag, and Ms. Geary had to shift

14   the blame to David Geary alone.  That's when the thumb drive

15   was turned over to the police, but not until a week later when

16   the investigation became more involved.

17        The Court has also considered the history and

18   characteristics of the defendant.  Ms. Geary is 52 years of

19   age.  She has four children, one of whom is the victim

20   identified in the case and is in foster care.  Her 82-year-old

21   father lives with her, and she takes care of him as he is in

22   the early stages of Alzheimer's disease.  She had been married

23   to codefendant David Geary for over 30 years.  She is now

24   divorced from him.

25        She has worked in the past but also stayed home with

 1    the children.  She has multiple health conditions, but none are

 2    so severe alone or in combination with each other as to make

 3    imprisonment too severe of a punishment.

 4          She is currently in family counseling.  Ms. Geary

 5    has a high school education.  She has no substance abuse issues

 6    and no prior criminal history.

 7          Next, the Court made sure the sentence reflects the

 8    seriousness of the offense, promotes respect for the law, and

 9    provides just punishment for the offense.  The sentence of

10    probation asked for by Ms. Geary would not achieve the

11    sentencing purposes.  Law prohibiting child pornography must be

12    applied consistently to all offenders in similar circumstances.

13          Child pornography is becoming pervasive with more

14    and more children being abused.  Multiple studies and common

15    sense shows the lives of these children are ruined, sometimes

16    irrevocably.  The Court must balance the suffering of these

17    children and the interests of the public with the interest of

18    Ms. Geary.

19          In giving this sentence, the Court also believes

20    that the sentence will afford adequate deterrence to criminal

21    conduct.  Likewise, this sentence is sufficient to protect the

22    public from further crimes of the defendant.  Finally, the

23    sentence to be imposed will provide the defendant with needed

24    correctional treatment in the most effective manner.

25          In arriving at its decision, the Court has also

 1   considered the kinds of sentences available, the advisory

 2   range, the pertinent policy statements issued by the Sentencing

 3   Commission, the need to avoid sentencing disparities, and the

 4   need to provide restitution.

 5           Ms. Geary, will you and Ms. Connor please approach

 6   the podium.

 7      (Defendant and counsel approach.)

 8           **THE COURT:**  Ms. Connor, now that you've heard the

 9   reasoning about the applicability of the Section 3553(a)

10   factors in this case, as Ms. Geary's lawyer, do you have

11   anything else you want to say in her behalf?

12           **MS. CONNOR:**  Nothing more than we have already

13   raised, Your Honor.

14           **THE COURT:**  Okay.  And this next question, I'm not

15   asking you to agree with the sentence because you absolutely

16   disagree with it.  I understand that and I respect that.  Are

17   you satisfied the Court has addressed your main arguments in

18   mitigation?

19           **MS. CONNOR:**  Yes.

20           **THE COURT:**  Is there any arguments I did not address

21   that effects sentence?

22           **MS. CONNOR:**  I believe the Court has addressed them.

23           **THE COURT:**  Thank you.  And you have raised your

24   objections to supervision, which are on the record at this

25   point.

1          **MS. CONNOR:**  Yes.

2          **THE COURT:**  Ms. Geary, I ask you the same question

3   to some extent, mixed with a little legalism in it.  Are you

4   satisfied that I have addressed your arguments, not that you

5   agree with them?  I'm not asking you to agree with it.  I know

6   you don't agree with it.

7          **THE DEFENDANT:**  Yes, sir.

8          **THE COURT:**  But have I addressed your arguments?

9          **THE DEFENDANT:**  Yes, sir.

10         **THE COURT:**  Okay.  And I understand you have the

11  same objections to the conditions of supervised release that

12  Ms. Connor raised?

13         **THE DEFENDANT:**  Yes, sir.

14         **THE COURT:**  Is there anything else you would like to

15  say on your own behalf?

16         **THE DEFENDANT:**  There is nothing more to say, sir.

17         **THE COURT:**  Ashley, did you get that?

18         **THE REPORTER:**  Yes.

19         **THE COURT:**  I heard Ms. Connor.  She has a

20  reasonably loud voice.

21         **THE DEFENDANT:**  There is nothing more to say, sir.

22         **THE COURT:**  Okay.  Thank you.

23         Mr. Berry, does the government have any further

24  comments or recommendations as to the sentence the Court should

25  impose?

 1          **MR. BERRY:**  No, Your Honor.

 2          **THE COURT:**  And my understanding is you have no

 3  objections to the conditions of supervision; is that correct?

 4          **MR. BERRY:**  That's correct.

 5          **THE COURT:**  I will now state the sentence.  After I

 6  finish stating the sentence, I will give counsel one final

 7  chance to make legal objections before the sentence is imposed.

 8          Pursuant to 18 U.S.C. § 3551 and 3553, it is the

 9  judgment of the Court that Ms. Geary be sentenced to the

10  custody of the Bureau of Prisons for a term of 57 months.

11  Because Ms. Geary does not have the financial resources to pay

12  a fine without impairing her ability to support herself and her

13  dependents, I will not impose a fine.

14          Ms. Geary is ordered to pay restitution in the

15  amount of $55,600 to be disbursed to MF-2, and her liability is

16  to be joint and several with David Geary.

17          Ms. Geary must notify the United States Attorney for

18  this district within 30 days of any change of name, residence,

19  mailing address, or any change in the economic circumstances

20  that might affect her ability to pay her financial obligations

21  related to this case.

22          Finally, Ms. Geary is ordered to pay the United

23  States a special assessment of $100 within 14 days of entry of

24  judgment.  In addition, Ms. Geary shall be placed on supervised

25  release for a term of five years with the conditions listed in

1    the order entered at Docket Entry 84, to which I will again

2    note the objections posited both as to three of the conditions

3    and also to the length of five years.

4          And, counsel, do either of you have any reason other

5    than what you've already argued why the sentence should not be

6    imposed as stated?

7          **MS. CONNOR:**  No, Your Honor.

8          **THE COURT:**  Okay.

9          **MS. CONNOR:**  Nothing further.

10          **THE COURT:**  Mr. Berry?

11          **MR. BERRY:**  Your Honor, the only thing that I think

12   is unaddressed right now is the restitution for the victims

13   that were not known to Ms. Geary, who were also on that thumb

14   drive but are technically part of the possession count.  I

15   understand you've impose the $55,600 joint and several with

16   David for MF-2.  But is it my understanding the Court is not

17   going to impose any restitution as to the other victims?

18          **THE COURT:**  That is correct.

19          **MR. BERRY:**  Okay.  I just needed to hear that on the

20   record.  Thank you.

21          **THE COURT:**  I appreciate it.  You are correct.

22          Finally, Ms. Geary is ordered to pay the United

23   States a special assessment of $100 within 14 days of entry of

24   judgment.

25          The Court orders the sentence to be imposed as

1   stated.  As required by 18 U.S.C. § 3583(f), the Court directs

2   the probation officer to provide the defendant with a written

3   statement that sets forth all conditions to which the term of

4   supervision is subject and that is sufficiently clear and

5   specific to serve as a guide for the defendant's conduct and

6   for such supervision.

7          Also, within 72 hours of Ms. Geary's release from

8   prison, the probation officer is to meet with and remind

9   Ms. Geary of the conditions of her supervision.  In addition,

10  at that time the probation officer should consider whether to

11  recommend to the Court any revisions to the conditions of

12  supervision in light of any changed circumstances or

13  Ms. Geary's experience brought on by her incarceration.

14         And, Ms. Connor, does Ms. Geary have a preference as

15  to where she would serve her sentence?

16         **MS. CONNOR:**  No, Your Honor.  However, we would ask

17  the Court to recommend that she be evaluated based on her

18  mental health and medical needs for a medical facility within

19  the Bureau of Prisons.

20         **THE COURT:**  I'll make that recommendation.  You've

21  said it all.  If I try to restate it, I'll not get it quite

22  right.

23         **MS. CONNOR:**  Do you want me to say it again?

24         **THE COURT:**  Yeah.  Make it what would be the

25  recommendation, actually what you're asking for.

1       **MS. CONNOR:**  We would like to recommend that the

2   Court recommend that Ms. Geary be evaluated based on her mental

3   health and medical needs for a medical facility within the

4   Bureau of Prisons.

5       **THE COURT:**  And I would make that recommendation.

6   You need an evaluation before they can recommend a healthcare

7   facility, but they'll do that.  And my understanding is they --

8   my recommendation is one of the factors they consider, and I

9   hope they do follow it in this case.

10      Also, again, it wasn't much time you served.  I

11  think there was the day you got arrested or something like

12  that.  I will give you credit for any time you served awaiting

13  sentencing on this charge.  It's not very much, but there may

14  be some time out there.

15      Ms. Geary, you have heard the judgment of this Court

16  imposing sentence upon you.  Pursuant to Rule 32(j)(1)(B) of

17  the Federal Rules of Criminal Procedure, I advise you that you

18  can appeal your conviction in this case if you believe that

19  your guilty plea was somehow unlawful or involuntarily or if

20  there is some other fundamental defect in the proceeding that

21  was not waived by your guilty plea.

22      You also have a statutory right to appeal your

23  sentence under certain circumstances, particularly if you think

24  the sentence is contrary to law.  With few exception, any

25  notice of appeal must be filed within 14 days of entry of

  1    judgment in your case.

  2            If you want to file an appeal and if you are unable

  3    to pay the cost of an appeal, you may apply for leave to appeal

  4    at no cost to yourself.  If you so request, the Clerk of the

  5    Court will prepare and file a notice of appeal on your behalf.

  6            And, Ms. Connor, while I don't have to remind you,

  7    for the record I need to do that.  I remind you of your duty to

  8    perfect a timely appeal of this sentence should your client

  9    wish to do so.  Furthermore, pursuant to Circuit Rule 51, you

 10    are responsible for the continued representation of your client

 11    on appeal unless relieved by the Court of Appeals.  All

 12    requests for appointment of appellate counsel must be taken to

 13    the Court of Appeals.  This Court does not have the power to

 14    entertain such request.

 15            Ms. Geary is ordered to report for service of the

 16    sentence on September 12, 2019, at noon.

 17            **MS. CONNOR:**  Your Honor, thank you very much for

 18    allowing her to voluntarily surrender.  Between now and

 19    September 12, I have no idea what the position of the juvenile

 20    authorities are going to be regarding visitation with her

 21    daughter.  Could the Court give us a little insight if, in

 22    fact, they allow visitation, what we need to do in order to --

 23    is it with this Court, or can we rely on whatever is permitted

 24    by the juvenile authorities?

 25            **THE COURT:**  I think what has -- what needs to happen

 1     is when the juvenile authorities come to some resolution what
 2     they want to allow, that starts with the probation officer.
 3     And then probably if there is not an agreement between the
 4     parties, it gets back to me again.
 5            **MS. CONNOR:**  And in this pre-surrender stage, would
 6     that be Mr. Beier?
 7            **THE COURT:**  Yes.  Okay.  And I assume it's going to
 8     be the same as it is right now?
 9            **MS. CONNOR:**  We don't know that.  We don't know what
10     changes, if any, they will make.  But I just want to make sure
11     that if they make that visitation possible, which I assume they
12     would want to have an opportunity for them to interact before
13     surrender, I just want to make sure we handle it appropriately.
14            **THE COURT:**  Right.  I'd say it starts with the
15     juvenile state, but Mr. Beier has to sign off on it likewise.
16     If there is a disagreement, it will come to me on that issue.
17            **MS. CONNOR:**  Thank you.
18            **THE COURT:**  Ms. Geary, soon after -- you stay in
19     contact with Ms. Connor.
20            **THE DEFENDANT:**  Absolutely, sir.
21            **THE COURT:**  You've got a wonderful attorney.  You
22     should receive a notice from the Federal Bureau of Prisons as
23     to where you need to present yourself.  Please be mindful that
24     you must comply with the notice you receive from the Federal
25     Bureau of Prisons.

1        And, again, I never follow -- I never hear much

2  after that point; but if you don't get that notice in close to

3  the time you're supposed to report, make sure Ms. Connor knows

4  that.

5        **THE DEFENDANT:**  Yes, sir, I will.

6        **THE COURT:**  I don't want you to get stuck not

7  knowing up somewhere.  Please remember that until you are

8  surrendered to the Bureau of Prisons, the conditions of release

9  previously set by this Court continue to apply and that if you

10  fail to present yourself to the Bureau of Prisons as ordered,

11  you may be committing a further criminal offense subjecting you

12  to further prosecution.  Do you understand?

13        **THE DEFENDANT:**  I understand, sir.

14        **THE COURT:**  And, counsel, anything else we need to

15  address today, Ms. Connor?

16        **MS. CONNOR:**  No, Your Honor.  Thank you.

17        **MR. BERRY:**  Your Honor.

18        **THE COURT:**  Yes, Mr. Berry.

19        **MR. BERRY:**  The only thing I need to address now is

20  now that Ms. Connor has asked for an evaluation of Ms. Geary

21  based upon her mental health, all the alarm bells in my 2255

22  head start going off.  And so if we could ask Ms. Connor to

23  flesh that out a bit to make sure that it's clear that she

24  doesn't have any concerns about the voluntariness of her plea

25  or anything like that; nothing has changed since her guilty

 1   plea but that the mental health is related to something else.

 2   If she could explain that a little bit better, I think that

 3   will help down the road on any kind of appeal or collateral

 4   attack.

 5          **MS. CONNOR:**  First of all, my request was not for a

 6   mental health evaluation.  My request was for an evaluation

 7   based on what's in the PSR --

 8          **THE COURT:**  For purpose of placement.

 9          **MS. CONNOR:**  -- for her placement, and I am not

10   suggesting that all the sudden I have some issue regarding her

11   competency at all.

12          **MR. BERRY:**  Okay.

13          **THE COURT:**  It's going to stand where it is.

14          **MS. CONNOR:**  I wasn't even thinking about a 2255

15   when I made that request, Your Honor.

16          **MR. BERRY:**  I'm sorry, I couldn't hear that.  I'm

17   having a hard time hearing Ms. Connor now.

18          **MS. CONNOR:**  I said I was not even thinking about a

19   2255 when I made that request.  That was regarding appropriate

20   placement in the Bureau of Prisons for Ms. Geary.

21          **MR. BERRY:**  Sure.  And I'm not suggesting Ms. Connor

22   was trying to do something nefarious.  I'm just saying I heard

23   the word.  I know the 2255 down the road could bring this up,

24   and I wanted to clarify that, which she has.  Thank you.

25          **THE COURT:**  Okay.  I stand by the recommendation.

1          **MS. CONNOR:**  Thank you, Your Honor.

2          **THE COURT:**  Ms. Geary, do you have any questions?

3          **THE DEFENDANT:**  No, sir.

4          **THE COURT:**  Okay.  You know, this quite honestly has

5  been one of the most difficult sentencings I have witnessed.  I

6  think for all parties involved that is the case.

7          What I have seen is a total destruction of a family.

8  I have never seen that before like this.  I can't imagine

9  anything worse.  Unfortunately, the sentence I just announced

10  has not done anything to help, and it is not the final chapter.

11  I can only hope with the passage of time that children can put

12  their lives back together because they will never forget this.

13          They are scarred forever.  They are the true

14  victims.  I just hope they can find some peace about the whole

15  thing.

16          Ms. Connor, thanks for accepting the Court's

17  appointment.

18          **MS. CONNOR:**  Your Honor, actually I was not

19  appointed in this case, but it was for all practical purposes a

20  pro bono case.

21          **THE COURT:**  Right.  Thank you for doing it.  However

22  you got here, I thank you for doing it.  The Court is

23  adjourned.

24     (Proceedings concluded at 11:53 p.m.)

25

1                     * * * * *

2

3                  *CERTIFICATION*

4        I, ASHLEY N. STOKES, Federal Court Reporter, certify
   that the foregoing is a correct transcript from the record of
   proceedings in the above-entitled matter.

5

6

7
           S/Ashley N. Stokes_____  August 21, 2019
8          Certified Realtime Reporter
           United States District Court
9          Northern District of Indiana
           Hammond Division
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25