```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF INDIANA
                             HAMMOND DIVISION

   UNITED STATES OF AMERICA        ) Cause No.:
                                   ) 2:17-cr-169
       vs.                         )
                                   )
   SHEILA GEARY,                   ) Hammond, Indiana
                                   ) August 8, 2019
            Defendant.             )
                                   )
   _____ )


       TRANSCRIPT OF HEARING ON CONDITIONS OF PRETRIAL RELEASE
              BEFORE THE HONORABLE JOHN E. MARTIN
                  UNITED STATES MAGISTRATE JUDGE

   APPEARANCES:

   For the Government:       ABIZER ZANZI
                             ASSISTANT UNITED STATES ATTORNEY
                             UNITED STATES ATTORNEY'S OFFICE
                             5400 Federal Plaza, Suite 1500
                             Hammond, Indiana  46320
                             (219) 937-5500
                             Abizer.zanzi@usdoj.gov


   For the Defendant:        KERRY C. CONNOR
                             LAW OFFICE OF KERRY CONNOR
                             9013 Indianapolis Boulevard, Suite C
                             Highland, Indiana  46322
                             (219) 972-7111
                             Kcconnor@scglobal.net


   Also Present:             David Beier, U.S. Probation
                             Phil Coduti, Homeland Security




   Proceedings reported by audio recording.  Transcript produced
   from electronic record of proceedings.

                    ─Ashley N. Stokes, CSR, RPR─
             Ashley_Stokes@innd.uscourts.gov/ (219) 852-6557
```

```
 1        (The following proceedings were held in open court
 2         commencing at 10:35 a.m., transcribed from electronic
 3         media as follows:)
 4              THE COURT:  We are here in the matter of United
 5   States of America v. Sheila Geary, Cause No. 2:17-CR-169.
 6   Ms. Geary is here with counsel, Kerry Connor.
 7       Good morning, Ms. Connor.
 8              MS. CONNOR:  Good morning, Your Honor.
 9              THE COURT:  Good morning, Ms. Geary.
10              THE DEFENDANT:  Good morning.
11              THE COURT:  The government is represented by its
12   Assistant United States Attorney Abizer Zanzi.
13       Good morning, Mr. Zanzi.
14              MR. ZANZI:  Good morning, Your Honor.  And just for
15   the record, I have the case agent, Special Agent Phil Coduti of
16   Homeland Security, sitting with me as I was not the AUSA on
17   this case.  I just want to make sure that -- in case I need to
18   refer to him and make sure I'm not stating anything
19   inaccurately.
20              THE COURT:  Okay.  And that's fine.
21       Good morning, Agent Coduti.
22              MR. CODUTI:  Good morning, sir.
23              THE COURT:  All right.  And the government has filed
24   a motion to modify conditions of pretrial release.
25       Ms. Connor, have you reviewed that motion?
```

1            **MS. CONNOR:**  Yes.

2            **THE COURT:**  Does the defense object to the motion?

3            **MS. CONNOR:**  Your Honor, we do object to it.

4            **THE COURT:**  Well, I mean, obviously, you object --
5    there's an either/or.  And the first one, the first either is
6    to restrict as a condition of bond Ms. Geary from having any
7    contact with any children under the age of 18.

8         Is there an objection or is there sort of a hybrid to that
9    that you wish to address?

10           **MS. CONNOR:**  Yes, Your Honor.  And I do think it's
11   important to address the Court on this.  This is one of the
12   supervised release conditions that we objected to at the time
13   of sentencing.  And I would specifically point out to the Court
14   that the -- the problem with the condition, and I want to
15   reiterate that, is not so much children under 18 but including
16   her own children.

17        This is specifically referencing her daughter Jacky, who
18   is the only minor child, and who is currently in therapeutic
19   foster care.  This condition, as well as other conditions that
20   have been proposed and included in the supervised release
21   conditions, Your Honor, we believe unnecessarily and
22   incorrectly usurp the position of the family court in
23   determining what is, in fact, appropriate.

24        The condition that was imposed by the Court did not limit
25   contact with -- with Jacky.

1            **MR. ZANZI:**  Your Honor, can I just ask that
2   reference -- specific references to the victim's name be
3   stricken from the record and just not -- can we just refer to
4   her as --
5            **THE COURT:**  Just say "the child," and I'll know who
6   you're talking about.
7            **MS. CONNOR:**  The child.
8            **MR. ZANZI:**  I know it's not intentional.
9            **THE COURT:**  Is that all right?
10           **MR. ZANZI:**  Yes, Your Honor.
11           **MS. CONNOR:**  And that's fine, Your Honor.  I just
12  would note for the record that when we were in sentencing, I
13  believe Mr. Berry allowed those references to be put into the
14  record at the time of sentencing.  But anyway --
15           **THE COURT:**  Okay.  I know who you're talking about.
16           **MS. CONNOR:**  You know who I'm talking about.  I want
17  to make sure you understand we are talking about one minor.
18           **THE COURT:**  And that is important.  It is referenced
19  in the plural, so I'm glad to note --
20           **MS. CONNOR:**  There is only one minor child.
21           **THE COURT:**  That does clear that up.
22           **MS. CONNOR:**  And she is present in court today with,
23  I assume, representatives of CASA and CPS.  I don't believe her
24  therapist is present, but there are persons here with her.
25       My concern is what I -- what I announced to the Court at

1  the time of supervision is that this Court was going to become
2  some type of pseudo family law court in determining whether or
3  not the child should have contact with her mother and the
4  condition, which places the approval on the probation officer
5  of whether the person is appropriate, to be the supervisor of
6  that visitation.
7  　　　　And I think this is an important thing to make this Court
8  aware of, Your Honor, because up until the sentencing, within
9  days of Ms. Geary's sentencing, she was having five hours a
10 week of visitation with her daughter, all supervised by a
11 therapist or other designated individual.
12 　　　　It is my understanding that since that time, no one has
13 contacted Mr. Beier, no one has contacted the defense, to take
14 this matter before the Court to see if those same people are
15 qualified under -- if the Court would have any objection to
16 those people being the supervisor of visitation.
17 　　　　That was my very concern, Your Honor.  This provision has
18 been used by some to argue that Ms. Geary is not to have any
19 visitation with her daughter by Court order of the federal
20 court.  And that is not correct.  And, again, that is why we
21 objected to it from the outset.
22 　　　　I think that this whole motion is unnecessary.  I would
23 make the Court aware that on, I believe it was -- July 1st or
24 was it August 1st -- August 1st, the family law court issued an
25 order saying that unless the minor child wanted to have

1  visitation her with mother, she would not.  And Ms. Geary was
2  informed that it would be fine for her to check in with the
3  appropriate authorities, not the child, to see if she was
4  interested in visitation.
5      I believe -- I apologize to the Court because this is not
6  my norm, but I feel like this proceeding, not necessarily this
7  assistant, but that this was used in a way to manipulate,
8  again, the situation to create a federal court supervisory rule
9  over the family court.
10      This is a nonissue.  Ms. Geary has not had visitation with
11  her daughter since the date of her sentencing because it is our
12  understanding, and as was announced in the family court, that
13  her daughter did not want to visit with her or any of her
14  siblings.  And that has been abided by.
15      So, Your Honor, I don't believe that this is a necessary
16  condition.  We continue to object to it because it really
17  creates an illegal situation where the federal court is
18  overseeing a family law court decision.
19      So -- and certainly we object, even though I understand
20  that Mr. Zanzi is not pursuing this, this so-called alternative
21  that somehow Ms. Geary has done something wrong by making a
22  request through her attorney to the family court to request
23  visitation; thus, that would somehow suggest that her condition
24  should be revoked.  It's just wrong.  This is just wrong.
25  Ms. Geary has done absolutely nothing that would warrant such a

```
 1   response from the government as this filing suggests.
 2         So under those circumstances, Your Honor, we do object
 3   because we feel that it is an illegal provision regardless, but
 4   it is a nonissue.  It's an absolute nonissue because the family
 5   law court has already ruled supervised visitation only when the
 6   minor child wants it.
 7            THE COURT:  All right.  Thank you.
 8       Mr. Zanzi, did the government object to the report date at
 9   the time of sentencing?
10            MR. ZANZI:  Actually, I don't know.  To the report
11   date?
12            THE COURT:  To having a report date rather than an
13   immediate custody situation.
14            MR. ZANZI:  I don't believe so, Your Honor.
15            THE COURT:  Okay.  I don't mean to put you on the
16   spot with regard to that.  Agent Coduti, are you -- well,
17   Ms. Connor, there was no objection then to her reporting?
18            MS. CONNOR:  Not that I recall.
19            THE COURT:  Let me just run this by you, Mr. Zanzi,
20   before I ask you to respond.
21            MR. ZANZI:  Sure.
22            THE COURT:  So let me just share my thoughts, and
23   then you can both respond, both lawyers can respond to this.
24   With regard to a victim that is alleged to be a victim of a
25   crime, if the government asks for a no-contact order, I
```

1   typically grant a no-contact order.

2   In the circumstances where the victim that is alleged to
3   be a victim by the government is a family member where there is
4   potentially necessary contact that should or could take place,
5   then, you know, I would potentially defer to other authorities
6   with regard to that, which would include family courts and
7   CASAs and the county welfare departments and the state
8   departments.

9   So there's sort of two roles that are being placed here.
10  So my inclination is to order no contact between Ms. Geary and
11  any alleged victim of the crimes that are alleged without order
12  of my -- my order.  And what would induce me to modify that
13  order would be if there was a recommendation by the state
14  authorities or the state judicial proceedings or the
15  supervising proceedings that a visitation take place.

16  And then I would say that, Ms. Connor, if that were
17  something that was being recommended to have happen or the
18  victim wanted that to happen, then you could file a petition,
19  and I would get that into Court within 24 or 48 hours of that
20  so that that could take place.

21  But then, you know, I would -- so I would place an
22  additional restriction:  No contact with any victim.  However,
23  I would then write into the order that if the state authority,
24  the concurrent jurisdiction over parental rights and child
25  rights, was making that recommendation, then that could be

1  petitioned to me.  And I would bring that into Court just as
2  quickly as possible so that that could potentially take place.
3       But I don't want to make the authority have to be the
4  probation department.  I would want to have that authority be
5  me, myself, to make that decision.  And at that time, the
6  government could either object or the government may go along
7  with it after talking to the state authorities, and then the
8  defense could also talk to those authorities.
9       But I would make that, you know -- we would make that
10 available.  Just as soon as the petition hit the computer, I
11 would prioritize and get that case into court.  I will also
12 indicate that I am -- I am not scheduled to be away between now
13 and this report date, so I'm available Monday through Friday,
14 every day, and would make myself available.
15       So what would the government say about that?
16         **MR. ZANZI:**  I think that seems like a workable
17 solution.  So you are proposing, Your Honor, if I understand it
18 correctly, that there would just be a no-contact order with the
19 victims in this case.
20         **THE COURT:**  But I don't mean that no-contact order
21 to stop the state authorities from if they want to work towards
22 some kind of visitation that they think is necessary or
23 something that should happen.  You know, I want to -- that's
24 why my order is going to be written that if they want something
25 to happen, then that will allow it to happen because then that

1  can be brought to me.  If they make that recommendation,
2  Ms. Connor can file a motion --
3             **MR. ZANZI:**  Sure.
4             **THE COURT:**  -- bring that to my attention, and I'll
5  -- I could make the exception that -- actually what this is
6  requesting that the probation department make.
7             **MR. ZANZI:**  I think so -- if -- to -- I don't know
8  if this is answering directly, but let me at least explain from
9  the government's perspective --
10            **THE COURT:**  Okay.
11            **MR. ZANZI:**  -- of why this motion is here.
12            **THE COURT:**  Sure.
13            **MR. ZANZI:**  And maybe that sort of informs how you
14  want to deal with it because I think --
15            **THE COURT:**  If I issue a no-contact order, I don't
16  want to stop the state authorities from doing what they're
17  doing.
18            **MR. ZANZI:**  Right.
19            **THE COURT:**  That's why I want to add the caveat --
20            **MR. ZANZI:**  Sure.
21            **THE COURT:**  --  that I will be willing to be
22  malleable on this if, in fact, they recommend it.
23            **MR. ZANZI:**  And it may be a lot of this may not be
24  an issue.  Part of this is -- the reason for this motion is to
25  address a discrepancy, Your Honor.

1    And, you know, orders like this, conditions like this, are
2    often -- maybe not exactly how it's worded here -- these are
3    granted as pretrial conditions in sexual exploitation cases,
4    Your Honor, about not having contacts with minors except under
5    the ordinary course of business, including the minor victims
6    that are family members.
7    So it's not an unusual condition.  The reason why it was
8    raised is, although it's not to influence in any way the family
9    court proceeding, but the family court does look to and note
10   what is happening in the docket because, just as you,
11   Your Honor, are doing yourself, you are trying to make sure
12   that, you know, there's some sort of -- you know -- the court
13   -- the criminal court's handling of her conditions is within
14   the bounds of its jurisdiction as well as the family court; so
15   we're looking to what the other courts are doing.  And that's
16   what the family court has done here in this -- the order that's
17   referenced in this motion.
18   And the -- so the current proposal, I mean, would not put
19   any undue restrictions.  It's not a blanket no-contact order.
20   It's similar to what Judge Van Bokkelen has already carefully
21   considered as an appropriate condition afterwards.  So I think
22   that would be a workable solution.  And I think it's tailored
23   in a way really just as a safeguard, and this is largely driven
24   by the victim herself.  I'm not saying that -- I am not
25   alleging that there is some revocation here that needs to

1  happen or anything like that.
2      It is -- at this point she's not an alleged victim
3  anymore.  There has been a judicial finding that she is a
4  victim, and she -- circumstances have changed.  She's testified
5  at the hearing, and this is -- although we're probably only a
6  little over a month away from the sentencing, this is a source
7  of anxiety.  And I do have a statement here, which -- it's a
8  short statement.  It probably doesn't impact your decision --
9  but that she asked me to read to the Court about her feelings
10 on this.  And that's why she is here today.
11     And so I -- I think you -- you're doing something similar
12 to what the government is asking in ensuring that there isn't
13 any contact with the victim unless, you know, there's a --
14         **THE COURT:**  Unless I order it.
15         **MR. ZANZI:**  Unless you order it, yeah.  So maybe
16 that works that way.  And if you feel that that's worded in a
17 way to allow for some flexibility in the family court --
18 probably not anticipated, but who knows -- then I don't have an
19 objection to that.
20     I would, if I may, read the brief statement from the
21 victim because I was asked to do that just on the record so
22 it's reflected as part of the consideration of the Court.
23         **THE COURT:**  Is there an objection to doing that from
24 defense?
25         **MS. CONNOR:**  I'm not going to object to it.  I don't

```
 1   -- I think under statute the victim is allowed to be heard.
 2              THE COURT:  Okay.  You can proceed, Mr. Zanzi.
 3              MR. ZANZI:  So this is from the victim.  It was
 4   written yesterday.
 5       It states:  "I do not want visitation with Sheila, the
 6   defendant.  I am all for the lead prosecutor Austin Berry's
 7   arguing statement against visitation.  I do believe that
 8   despite I am 13, I should have a choice if I want visitation.
 9   My answer is no.  My reasoning is I was put through years of
10   pain and abuse caused by David and Sheila" -- her -- the
11   defendants in this case.
12       "Note to self:  I am not a slave to my parents, hence for
13   my choices and opinions towards the continuation of visiting
14   with Sheila.  I see a future life of mine without the
15   manipulation of Sheila."
16       Take that for what it's worth, Your Honor.  I think it's
17   important in these hearings to consider the wishes of the
18   victim who asked to be heard here.
19              THE COURT:  Okay.  Thank you, Mr. Zanzi.
20       All right.  And then, Ms. Connor?
21              MS. CONNOR:  Yes, Your Honor.
22              THE COURT:  You've heard my thoughts.  Now, we've
23   heard from Mr. Zanzi.  Now, I'd like to hear from the defense.
24              MS. CONNOR:  Your Honor, on July 1, 2019, there was
25   a status report that was issued from Lisa M. Olsen, who is the
```

1  family case manager, and Melanie Cox, the family case manager
2  supervisor.  And I want to make the Court aware that the
3  request was made to the family court to discontinue all contact
4  with Ms. Geary.
5       However, after the family law court heard the matter on
6  August 1st, the Court determined that the best interests of the
7  child were to allow for visitation if she chose to have that
8  visitation.
9       I think that it's important to hear from the victim.  The
10 victim is 13 years old.  The victim is in therapy.  There may
11 come a time, even in this short time between now and
12 September 12th, that the therapist believes that a visitation
13 is in order.  I think that it is inappropriate attempt -- it is
14 an inappropriate attempt to oversee the proceedings in family
15 court where the therapist, the CPS, CASA, all the various
16 individuals are presented before the Court to make a
17 determination as to what's best for the child.
18      For this Court, for the federal court, to put themselves
19 in the position without any evidence on the matter other than
20 the statement of a 13-year old, Your Honor, I think is
21 problematic.  And that's why I objected to the condition in the
22 first place.
23      Also, the fact that the probation officer was put in the
24 position of having to determine whether the family court's
25 designation of a supervising person was appropriate, I have the

1  same objection here, Your Honor.  Obviously, Ms. Geary will
2  abide by any condition this Court sets.  I do think, though,
3  the Court should also be aware that in the August 1st order
4  issued by the family court, that still the goal -- still the
5  goal even after sentencing in this case -- is to reunite
6  Ms. Geary with her daughter.
7      And also Your Honor should be aware that the minor victim
8  has indicated she does not have a desire to be adopted.  So the
9  orders of the family court would encourage some type of
10 potential contact when the minor victim is ready, and I don't
11 believe that it's appropriate to put this second layer on or
12 even to potentially affirm the decision of the minor not to see
13 her mother if, in fact, there comes a time in the next month
14 that the Court determines that that is important
15 therapeutically for the child.
16     Whether or not that causes stress does not necessarily
17 mean it's not the right thing therapeutically.  And I'm very
18 concerned, Your Honor.  Throughout the sentencing the
19 government cited various research about what is the least
20 stressful for the child.  These types of proceedings ultimately
21 under the government's research would suggest create greater
22 stress for the child rather than allowing them to move on in a
23 therapeutic environment.
24     So based on that, Your Honor, I do object to the
25 no-contact order.  We would ask the Court to allow these types

1   of decisions to be made where they should be made, in the
2   family court with all the evidence and all the information,
3   Your Honor.  Ms. Geary is surrendering on September 12th.  In
4   all likelihood, she won't see her minor child, and she won't
5   see her for 57 months.  So I'll leave it at that.
6               **THE COURT:**  Okay.  Anything else, Mr. Zanzi?
7               **MR. ZANZI:**  One final, brief comment, Your Honor.  I
8   would just say that in terms of the authority of this Court
9   that the pretrial bond conditions serve a different purpose
10  than, obviously, what the family court -- the family court is
11  looking for -- has a different analysis and both impact the
12  situation here.
13       And what the Court has the authority to do is set
14  conditions that ensure safety for the community and here for
15  the victims.  It is not unusual.  It is often common for the
16  Court to set conditions like the one that you are proposing.  I
17  think that what you are proposing is something that has caveats
18  that allow for flexibility and send a message to the family
19  court that this Court is not attempting to interfere with the
20  family court proceedings and the judgment of those proceedings.
21       But given the wishes of the victim, and the comfort that
22  it would provide to have such a restriction, I do believe it's
23  appropriate here in this short time before the report date,
24  Your Honor.
25               **THE COURT:**  Okay.  Well, as I've indicated, I

1  believe what's appropriate.  I am going to add a condition.  No
2  contact with the victim and -- until or unless there is further
3  order of this Court.
4       And I will indicate that if, in fact, the family court or
5  the family therapist or whatever programs -- if, in fact, they
6  are making those recommendations -- maybe the victim wants to
7  visit with her mother -- then that can be put into a petition,
8  either jointly or singularly.  And bring that to my attention,
9  and I will immediately schedule these proceedings.
10      Again, if that were filed today at 11:05, I would be
11 contacting Ms. Connor and Mr. Zanzi and saying, "Hey, can we do
12 this at 3:00 o'clock."  Or if it were filed at 3:00 o'clock, I
13 would be seeing if we could do it at 4:30 or at 9:00 o'clock
14 the next morning.  We'll get this schedule if, in fact, it
15 needs to be.
16      So I am going to issue -- and it's not anyone under the
17 age of 18.  That's a condition of the supervision.  It's --
18 this is -- I'm using it as my authority with regard to the
19 victims of an Indictment.  So it's the victims -- or the
20 victim.  And that's the no-contact order that I'm putting in
21 place until further order of Court, and that order of Court can
22 be held, if it's petitioned for.  Then I'll consider it at that
23 time, but at this time right now there is nothing scheduled
24 because the family court has not -- is not asking for it.
25      If the family court asks for it, bring it to my attention,

```
 1   and I'll be willing to consider exceptions.
 2              MS. CONNOR:  Your Honor?
 3              THE COURT:  Yes, Ms. Connor.
 4              MS. CONNOR:  Just for clarification, because the
 5   previous conditions were cited as prohibiting contact, not by
 6   the Court, not by the juvenile court, but by parties
 7   petitioning the juvenile court, the conditions were cited as a
 8   prohibition against Ms. Geary having contact with her daughter.
 9   So I want to clarify --
10              THE COURT:  The conditions of supervision?
11              MS. CONNOR:  Yes.
12              THE COURT:  Okay.  That's up to Judge Van Bokkelen,
13   and -- and -- and that's not my order.  That's
14   Judge Van Bokkelen's order.
15              MS. CONNOR:  Okay.  But what I'm trying to clarify
16   because we have people here who are active in the juvenile
17   court --
18              THE COURT:  Uh-huh.
19              MS. CONNOR:  I want to make clear, based on the
20   Court's order, the no-contact order certainly allows us to come
21   back to the Court if the juvenile court makes the decision that
22   visitation is appropriate.
23              THE COURT:  If the juvenile court makes a decision
24   that visitation is appropriate, then you will bring that to my
25   attention, and we will have a hearing as to whether or not I
```

```
 1  will make an exception to my order that says, "No visitation is
 2  allowed because no contact is allowed."  Yeah.
 3       That's your understanding?
 4            MR. ZANZI:  I think you made it clear, Your Honor.
 5  Yes, that seems appropriate.
 6            THE COURT:  Okay.  And I'll try to -- I'm going to
 7  try and write the order so that it's short but yet hits that
 8  point so that that's -- that's what everyone understands.
 9            MS. CONNOR:  Because my concern, Your Honor, is as
10  they did the conditions of supervision, certain parties will
11  use the no-contact order to say to the juvenile court,
12  "visitation is prohibited."
13            THE COURT:  Well, I'll try and write the order so
14  that it doesn't say that; and order a transcript of this
15  hearing, and you've got that as well.  But I think Mr. Zanzi
16  and -- Mr. -- Agent Coduti have been shaking their head as
17  well.
18            MS. CONNOR:  Okay.
19            THE COURT:  I mean, all of the professionals here,
20  the three of us -- the four of us all, I think, are on the same
21  page.
22       Okay.  Anything else on this issue at this point,
23  Mr. Zanzi?
24            MR. ZANZI:  No.  Thank you, Your Honor.
25            THE COURT:  All right.  Thank you, sir.
```

1      Anything else, Ms. Connor?

2            **MS. CONNOR:**  Nothing, Your Honor.

3            **THE COURT:**  All right.  Thank you, Ms. Connor.

4            **MS. CONNOR:**  Thank you.

5                          * * * * *

6      (End of requested transcript.)

7                          * * * * *

8                          *CERTIFICATION*

9

10     I, ASHLEY N. STOKES, Federal Court Reporter, certify that the foregoing is a correct transcript from the electronic record of proceedings in the above-entitled matter.

11

12     S/Ashley N. Stokes            September 18, 2019
       ASHLEY N. STOKES
13     Court Reporter
       U.S. District Court

Ashley N. Stokes, CSR, RPR
Ashley_Stokes@innd.uscourts.gov/ (219) 852-6557